**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CITIBANK, N.A., AS TRUSTEE, FOR THE BENEFIT OF THE HOLDERS OF CF 2020-P1 MORTGAGE TRUST COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2020-P1,

Plaintiff,

v.

HELLO FLATBUSH LLC, ELI KARP, THE CITY OF NEW YORK ENVIRONMENTAL CONTROL BOARD, AND JOHN DOE NO. I THROUGH JOHN DOE NO. XXX, INCLUSIVE, THE LAST THIRTY NAMES BEING FICTITIOUS AND UNKNOWN TO PLAINTIFF, THE PERSONS OR PARTIES INTENDED BEING THE TENANTS, OCCUPANTS, PERSONS, OR CORPORATIONS, IF ANY, HAVING OR CLAIMING AN INTEREST IN OR LIEN UPON THE PREMISES DESCRIBED IN THE COMPLAINT,

Defendants.

Case No.

## COMPLAINT FOR MORTGAGE FORECLOSURE

Plaintiff Citibank, N.A., as Trustee, for the benefit of the Holders of CF 2020-P1 Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2020-P1 ("**Lender**"), by and through its undersigned counsel, brings forth its cause of action against Defendants Hello Flatbush LLC, Eli Karp, City of New York Environmental Control Board, and John Doe No. I through John Doe No. XXX, and states as follows.

## PARTIES

1. Lender is a trust that has elected to be treated as a real estate mortgage investment conduit under the Internal Revenue Code of 1986. Citibank, N.A. ("**Citibank**") acts as trustee for

Lender and is a national banking association organized under the laws of the United States of America. With respect to the loan transaction that is the subject matter of this action. Midland Loan Services, a Division of PNC Bank, National Association ("**Midland**") acts as Special Servicer and authorized agent for Lender.

2. Hello Flatbush LLC ("**Borrower**") is a limited liability company organized and existing under the laws of the State of New York. Borrower has a principal place of business at of 33 35th Street, Suite B-613, Brooklyn, New York 11223. In the loan documents at issue in this case, Borrower agreed to receive service of process on its designated agent Fink & Zelmanovitz, P.C., 3938 Flatlands Avenue, Suite 206, Brooklyn, New York 11234, Attention: Delia Shalumov, Esq.

3. Eli Karp ("**Guarantor**") is an individual and citizen of the State of New York. Guarantor has an address of 33 35th Street, Suite B-613, Brooklyn, New York 11223.

4. Defendant City of New York Environmental Control Board ("**ECB**") is named as a defendant herein by virtue of any unpaid fines, fees, judgments, or other, if any, which may constitute a lien upon the property at issue, and which liens, if any, are subordinate to the lien of Plaintiff's mortgage sought to be foreclosed herein. ECB has an address of 66 John St #10, New York, New York 10038.

5. Defendants John Does I through XXX are currently unknown to Lender, but, upon information and belief, are tenants, occupants, persons, or corporations, if any, having or claiming an interest in or lien upon the premises to be foreclosed in this Complaint.

**JURISDICTION AND VENUE**

6. This is a civil action over which this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

7. In *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458 (1980) and *Americold Realty Tr. V. Conagra Foods, Inc.*, 577 U.S. 378 (2016), the United States Supreme Court confirmed a long-standing rule of jurisprudence that an express, "traditional" trust is not a juridical person—it is a fiduciary relationship—and, therefore, for purposes of diversity jurisdiction, only the citizenship of the trustee is considered. Courts sitting in the Second Circuit have adhered to the principles set forth in *Navarro* and *Americold* and held that the citizenship of the trustee of a traditional trust litigating in its own right, controls for the purposes of diversity jurisdiction. *See, e.g.*, *Raymond Loubier Irrevocable Trust v. Loubier*, 858 F.3d 719, 731 (2d Cir. 2017) ("because the party trusts here are not organized according to state law as distinct juridical entities but, rather, are traditional trusts, establishing only fiduciary relationships . . . it is the trustees' citizenship that must determine diversity"); *U.S. Bank N.A. v. 2150 Joshua's Path, LLC*, No. 13-CV-1598, 2017 WL 4480869, *3 (E.D.N.Y. 2017) (affirming that an express common law trust is deemed to have the citizenship of its trustee); *SPV-LS, LLC v. Bergman*, No. 15 CV 6231, 2019 WL 2257244, *16 (E.D.N.Y. 2019) ("For traditional trusts, it is the citizenship of the trustees holding legal right to sue on behalf of the trusts that is relevant to jurisdiction").

8. Plaintiff is a traditional trust, and its trustee, Citibank, is the real party in interest. Plaintiff's trustee, Citibank, brings this action in its own name in its capacity as trustee. Citibank is the owner of a pool of mortgage loans, which includes the loan that is the subject of this lawsuit, and holds these assets in trust for the registered holders of CF 2020-P1 Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2020-P1. This trust relationship was organized as a common law trust under the laws of the State of New York and is governed by a Pooling and Servicing Agreement dated as of April 1, 2020 (the "**PSA**"). The New York Civil Practice Law and Rules provides that a trustee of an express trust may sue in its own name. *See*

N.Y. CPLR § 1004. Under the PSA, Citibank holds trust assets for the exclusive benefit of the certificateholders. It is Citibank, acting through its loan servicer, Midland, who has dominion over the loans and the right and authority to defend lawsuits and file lawsuits with respect to trust assets. The beneficiaries of the trust (i.e., the certificateholders) have no such authority, nor do the beneficiaries of the trust have any ownership interest in the trust's property.

9. For purposes of diversity jurisdiction, Plaintiff has the citizenship of its trustee. Plaintiff's trustee, Citibank, is a national banking association. As stated in *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006), a national banking association is a citizen of the state where the bank has its main office. Citibank's main office is in Sioux Falls, South Dakota. Accordingly, Plaintiff is a citizen of South Dakota for purposes of federal diversity jurisdiction.

10. Defendant Borrower is a limited liability company, which, for diversity jurisdiction purposes, has the citizenship of its members. Borrower has two members—1355 Flatbush Avenue Mezz LLC and 1355 Flatbush Avenue LLC. 1355 Flatbush Avenue Mezz LLC is the sole member of 1355 Flatbush Avenue LLC.

11. The sole members of 1355 Flatbush Avenue Mezz LLC are Guarantor and Miriam Karp, both of which are domiciled in New York. Accordingly, Borrower and Guarantor are both citizens of New York for purposes of federal diversity jurisdiction.

12. The ECB also has New York citizenship because it is a New York entity.

13. There exists complete diversity between Plaintiff (South Dakota citizenship), on one side, and Borrower (New York citizenship), Guarantor (New York citizenship), and ECB (New York citizenship) on the other side.

14. Borrower is indebted to Lender pursuant to a commercial mortgage loan transaction, as described in more detail below. The outstanding balance on the loan exceeds

$75,000.00. Accordingly, the amount in controversy is greater than the $75,000.00 threshold for diversity jurisdiction.

15. The action properly lies in the Southern District of New York, as all or substantially all of the events or omissions giving rise to the claims occurred in this judicial district, and as Borrower and Guarantor consented to venue in this judicial district pursuant to the operative documents that are the subject of this suit.

## STATEMENT OF FACTS

***The Loan Transaction***

16. On or about February 28, 2020, Cantor Commercial Real Estate Lending, L.P. ("**Cantor**") made a commercial mortgage loan to Borrower in the original principal amount of $15,000,000.00 (the "**Loan**").

17. In connection with the Loan, Cantor and Borrower executed a Loan Agreement dated as of February 28, 2020 (the "**Loan Agreement**"). A true and correct copy of the Loan Agreement is attached hereto as **Exhibit A**.

18. In connection with the Loan, Borrower executed and delivered to Cantor an Amended, Restated, and Consolidated Promissory Note in the original principal amount of $15,000,000.00 dated as of February 28, 2020 (the "**Note**"). A true and correct copy of the Note is attached hereto as **Exhibit B.**

19. In connection with the Loan, Borrower executed and delivered to or for the benefit of Cantor an Amended, Restated, and Consolidated Mortgage and Security Agreement dated as of February 28, 2020, and recorded with the Office of the City Register of the City of New York ("**Register**") on March 10, 2020 as CRFN 2020000089397 (the "**Mortgage**"). A true and correct copy of the Mortgage is attached hereto as **Exhibit C**.

20. The Mortgage encumbers real property, and the improvements thereon, located at 1357 Flatbush Avenue, Brooklyn, New York 11238, and all or substantially all personal property owned by Borrower (collectively, the "**Property**"). The Property is a commercial property and is operating as an apartment building with retail space on the ground floor.

21. Borrower also executed that certain Assignment of Leases and Rents (the "**ALR**") dated February 28, 2020, pursuant to which Borrower absolutely and unconditionally assigned to Cantor all right, title and interest of Borrower in and to all leases and other agreements or arrangements affecting the use, enjoyment or occupancy of the Property (collectively, the "**Leases**") and all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties, income, fees, receivables, receipts, revenues, deposits, accounts, cash, issues, profits, charges for services rendered, and other payments received by or paid to or for the account of or benefit of Borrower arising from or attributable to the Property (collectively, the "**Rents**"). A true and correct copy of the ALR is attached hereto as **Exhibit D**.

22. The ALR was duly recorded with the Register on March 10, 2020, in CRFN 2020000089398. (Ex. D.)

23. The UCC Financing Statement (the "**Financing Statement**") perfecting Original Lender's lien on the personal property and fixtures that is included as part of the Property was recorded with the Register on March 10, 2020, in CFRN 2020000089399. A true and correct copy of the Financing Statement is attached hereto as **Exhibit E**.

24. The Mortgage, ALR, and Financing Statement were assigned by Cantor to CCRE Loan Seller, LLC ("**CCRE**") as evidenced by: (1) a certain Assignment of Mortgage dated as of March 10, 2020, and recorded with the Register on August 4, 2020, as CRFN 2020000219126; (2) a certain Assignment of Assignment of Leases and Rents dated as of March 10, 2020, and recorded

with the Register on August 4, 2020 as CRFN 202000021927; and (3) a UCC Financing Statement Amendment dated as of March 10, 2020, and recorded with the Register on August 4, 2020, as CRFN 2020000219128. True and correct copies of the recorded assignment to CCRE, assignment of assignment of leases and rents, and UCC amendment are attached hereto as **Exhibit F**.

25. CCRE assigned the Mortgage, ALR, and Financing Statement back to Cantor as evidenced by: (1) a certain Assignment of Mortgage dated as of April 30, 2020, and recorded with the Register on August 4, 2020 in CRFN 2020000219129; (2) a certain Assignment of Leases and Rents dated as of April 30, 2020, and recorded with the Register on August 4, 2020, as CRFN 2020000219130; and (3) a UCC Financing Statement Amendment dated as of March 10, 2020, and recorded with the Register on August 4, 2020 as CRFN 2020000219131. True and correct copies of the recorded assignment to Cantor, assignment of assignment of leases and rents, and UCC amendment are attached hereto as **Exhibit G**.

26. Thereafter, Cantor assigned the Mortgage, ALR, and Financing Statement to Lender as evidenced by: (1) a certain Assignment of Mortgage dated April 30, 2020, and recorded with the Register on August 4, 2020 in CRFN 2020000219132; (2) a certain Assignment of Leases and Rents dated as of April 30, 2020, and recorded with the Register on August 4, 2020 as CRFN 2020000219133; and (3) a UCC Financing Statement Amendment dated as of April 30, 2020, and recorded with the Register on August 4, 2020 as CRFN 2020000219134. True and correct copies of the recorded assignments to Lender, assignment of assignment of leases and rents, and UCC amendment are attached hereto as **Exhibit H**.

27. Also in connection with the Loan, Borrower executed that certain Lockbox - Deposit Account Control Agreement (the "**Deposit Account Agreement**") dated February 28, 2020, pursuant to which Borrower agreed to "(i) provide for the payment of rents and all other

income in respect of the Property into a deposit account separately established by Lender with Bank for such purpose and controlled by Lender, and (ii) grant to Lender a lien on and security interest in such deposit account and all money deposited therein, which account will be maintained for the benefit of Lender and administered." A true and correct copy of the Deposit Account Agreement is attached hereto as **Exhibit I**.

28. Also in connection with the Loan, Borrower executed that certain Cash Management Agreement (the "**Cash Management Agreement**") dated February 28, 2020, and in connection therewith, Borrower agreed that upon the occurrence of an Event of Default, Plaintiff had the right, and Borrower agreed to cooperate, to implement cash management in accordance with the Cash Management Agreement and other Loan Documents. A true and correct copy of the Cash Management Agreement is attached hereto as **Exhibit J**.

29. In connection with the Loan, Guarantor executed a certain Guaranty of Recourse Obligations (Unsecured) dated as of February 28, 2020 (the "**Guaranty**"). Pursuant to the Guaranty, Guarantor guaranteed the payment and performance of certain obligations of Borrower owed under the Note, Mortgage, and other Loan Documents (defined below). A true and correct copy of the Guaranty is attached hereto as **Exhibit K.**

30. The Loan Agreement, Note, Mortgage, ALR, Deposit Account Agreement, Cash Management Agreement, Guaranty, and all other documents evidencing, securing, or executed in connection with the Loan are collectively referred to herein as the "**Loan Documents**."

***<u>Borrower's Defaults</u>***

31. Pursuant to Section 2.3 of the Loan Agreement and Article 1 of the Note, Borrower is required to make monthly payments of principal and interest on the Loan (the "**Debt Service Payments**").

32. Borrower has failed to make the monthly Debt Service Payments for the months of September 2023 and each month thereafter. Borrower's failure to make Debt Service Payments as and when due under the Loan Agreement and Note constitutes an "Event of Default" under Section 8.01(a) of the Loan Agreement.

33. Under Section 2.7.1(b) of the Loan Agreement, Borrower is obligated to deliver Rents from the Property into a deposit account subject to Lender's lien (the "**Clearing Account**") within two days' after Borrower's receipt of such funds. Under Section 2.7.1(d), Lender is entitled upon an Event of Default, in Lender's discretion, to sweep funds from the Clearing Account for the payment of operating expenses for the Property and/or payment of the Loan. Borrower has failed to deposit Rents into the Clearing Account as required under the Loan Agreement and has otherwise failed to make Rents available to pay the Loan.

34. Pursuant to Section 5.1.11 of the Loan Agreement, Borrower is required to keep and maintain proper and accurate books, records, and accounts reflecting the financial affairs of Borrower and all items of income and expense in connection with the operation of the Property and to furnish to Lender financial reports regarding the Property. Pursuant to Section 5.1.11 of the Loan Agreement, Borrower is required furnish a rent roll for the subject month or quarter to Lender. Borrower has failed to provide to Lender the financial reports required under Section 5.1.11 of the Loan Agreement for the second or third quarter of 2023, nor has Lender received any rent roll from Borrower for any time period for calendar year 2023. These failures constitute additional Events of Default under the Loan Agreement.

35. Per a Stipulation of Settlement filed in Index No. 656462/2020 pending in the Supreme Court of New York County (the "**iCross Litigation**"), which is a lawsuit asserted by i-Cross Fund 4, LLC ("**iCross**") against Guarantor, among others, Guarantor has agreed to assign

100% of the ownership interests in Borrower to iCross and turn over all books and records pertaining to the business affairs of Borrower and operation of the Property to iCross. Guarantor did not consult with Lender or obtain Lender's consent to any transfer of the ownership interest in Borrower to iCross. Guarantor's transfer of the ownership interests in Borrower to iCross would constitute an Event of Default under Section 8.01(a)(iv) of the Loan Agreement and a "Springing Recourse Event" under Section 3.1(c) of the Loan Agreement.

36. In correspondence, dated October 6, October 16, October 26, November 9, and November 29, 2003. Lender, acting by and through its loan servicer Midland, provided notice to Borrower and Guarantor that Events of Default had occurred under the Loan Documents and requested cure of the same. A true and correct copy of these default notices are attached hereto collectively as **Exhibit L**.

37. In further correspondence dated November 22, 2023, Lender, acting by and through counsel, provided notice to Borrower and Guarantor of Borrower's failure to cure its defaults and Lender's acceleration of all of the indebtedness owed under the Note and other Loan Documents. Lender demanded immediate payment, in full, of all amounts owed under the Note and other Loan Documents. A true and correct copy of Lender's acceleration notice is attached hereto as **Exhibit M**.

38. Borrower and Guarantor have failed to cure the defaults under the Loan Documents despite notice of default having been provided by Lender.

39. Borrower and Guarantor have also failed to make payment of all amounts owed under the Note and other Loan Documents.

40. Borrower remains in default under the Loan Documents.

***Amounts Due Under the Loan Documents***

41. As of the filing of this Complaint, Borrower owes Lender more than $15 million on the Loan, which includes interest accrued at the default and non-default rates set forth in the Loan Documents, late charges, and other fees and costs set forth in the Loan Documents, including, but not limited to, attorneys' fees.

***Right to Possession and Rents***

42. Under Sections 7.1(h) and 7.1(i) of the Mortgage, upon an Event of Default, Lender is entitled to immediate possession of the Property and may collect and make use the rents, profits, and income from the Property.

43. The license granted to Borrower for use of the rents was terminated due to the occurrence of an Event of Default under the Loan Documents.

44. Lender is entitled to an order directing that all rents, issues, proceeds, revenues, profits, and income from the Property be remitted to Lender in accordance with the terms of the Mortgage, the Note, and other Loan Documents, and directing that any such amounts be used to reduce the indebtedness described above.

***Right to Foreclose***

45. Upon an Event of Default, Lender has the right to institute a proceeding for foreclosure. Lender is therefore entitled to an order directing that the Mortgage be foreclosed finding that the liens arising under the Mortgage be declared as first and prior liens on the Property, and ordering that Lender be granted immediate possession of the Property.

46. No other action has been brought to recover any part of the debt under the Mortgage, Note, or other Loan Documents.

47. Lender may not be deemed to have waived, altered, released, or changed its election to foreclose by reason of any payment made after the date of the commencement of this action of any and all of the defaults described herein.

48. Lender specifically reserves the right to pursue a temporary injunction, to seek appointment of a receiver, or to seek other relief with respect to its rights under the Loan Documents. Lender reserves the right to move this Court to enter final judgment against Borrower or any other party liable for any residue of the debt under the Note remaining unsatisfied after the foreclosure sale of the Property is completed, including Guarantor.

WHEREFORE, Lender respectfully requests that the Court enter judgment in favor of Lender for foreclosure of the Property as follows:

A. Finding that Lender has a first and best lien on the Property;

B. Finding that ECB's interest, if any, is junior to that of Lender;

C. Ordering that Lender has the legal right and is authorized to foreclose on the Property in one or more parcels according to law, including the fixtures and articles of personalty upon the premises;

D. Finding that such foreclosure will vest in the purchaser thereat free and clear title to the Property, free of any and all interests that are or might be asserted by the Defendants herein;

E. Ordering that Lender has the right to credit bid at such foreclosure sale any and all amounts owed by Borrower under the Note and other Loan Documents;

F. Ordering and directing that any referee appointed in this action, foreclose the Property and deliver title via a Referee's Deed, and bill of sale, as appropriate, to the successful bidder at such foreclosure;

G. Ordering and directing that the proceeds of the sale be applied as follows:

i. to payment of the expenses of the sale;

ii. to the payment of the debt owed to Lender under the Note and other Loan Documents;

iii. to the payment of foreclosure costs and other accrued costs in connection with the foreclosure;

iv. to the payment, at Lender's option, of any real property taxes that may be due and unpaid in connection with the Property;

v. to the payment, at Lender's option, of all other assessments against or attributable to the Property;

vi. the surplus, if any, to the payment of the debts secured by junior liens on the Property and then, to Borrower, in accordance with further order of the Court;

H. Ordering that Borrower has no right of redemption or reinstatement with respect to the Property;

I. Finding that Lender has preserved its rights to pursue any deficiency that may exist under the Note or other Loan Documents after application of the proceeds of the foreclosure sale and may move the Court to enter final judgment against Borrower and Guarantor for such deficiency; and

J. Ordering all other and further relief that the Court deems just, proper, and equitable.

Dated: December 15, 2023

Respectfully submitted,

POLSINELLI PC

By: */s/ Aaron P. Davis*
Aaron P. Davis
600 Third Avenue, 42nd Floor
New York, New York 10016
(212) 803-9918
adavis@polsinelli.com

-and-

Aaron C. Jackson (*pro hac vice* to be submitted)
900 W. 48th Place, Suite 900
Kansas City, Missouri 64112
(816) 360-4277
ajackson@polsinelli.com

*Attorneys for Plaintiff*