UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITIBANK, N.A., <br><br>                          Plaintiff, <br><br> -against- <br><br> HELLO FLATBUSH LLC et al., <br><br>                          Defendants. | 23-CV-10920 (AS) <br><br> OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

Citibank, N.A. brought this foreclosure action against borrower Hello Flatbush LLC, guarantor Eli Karp, and the New York City Environmental Control Board.[1] Citibank moves for summary judgment against Hello Flatbush and Karp, Dkt. 102, and Karp moves for summary judgment against Citibank and cross-claimant Hello Flatbush, Dkt. 111. For the reasons below, Citibank's motion is GRANTED IN PART and DENIED IN PART, and Karp's motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Hello Flatbush borrowed $15 million from Cantor Commercial Real Estate Lending, L.P. on February 28, 2020. Dkt. 1 ¶ 16. In connection with the loan, Karp executed a Guaranty Agreement. *Id.* ¶ 29. The terms of the loan were memorialized in a Loan Agreement executed that same day, and Hello Flatbush delivered a Promissory Note to Cantor in the amount of $15 million. *Id.* ¶¶ 17–18. A Mortgage Agreement in connection with the loan and dated February 28, 2020 was recorded with the New York City Register on March 10, 2020. *Id.* ¶ 19. It encumbered the commercial building at 1357 Flatbush Avenue, Brooklyn, New York 11238, as well as all personal property Hello Flatbush owned. *Id.* ¶ 20. The Mortgage Agreement, an Assignment of Leases and Rents, and a Financing Statement were assigned to CCRE Loan Seller, LLC. *Id.* ¶ 24. CCRE later assigned the loan and related agreements back to Cantor, and Cantor then assigned them to Citibank. *Id.* ¶¶ 25–26.

The loan documents require Hello Flatbush to make monthly principal and interest payments. *Id.* ¶ 31. Hello Flatbush hasn't made the payments since September 2023. *Id.* ¶ 32. In multiple letters in October and November 2023, Citibank, through loan servicer Midland, notified Hello Flatbush and Karp that events of default had occurred. *Id.* ¶ 36. At the end of November 2023, Citibank informed Hello Flatbush and Karp that Hello Flatbush failed to cure its defaults and

---

[1] The New York City Environmental Control Board is in default, and the Court will separately adjudicate the pending motion for default judgment. *See* Dkt. 148.

demanded immediate payment of the amounts owed. *Id.* ¶ 37. Citibank sued to foreclose on the property securing the loan in December 2023. *Id.*

In its answer, Hello Flatbush alleged crossclaims for breach of contract, breach of fiduciary duty, contribution, and indemnification against Karp. Dkt. 68 ¶¶ 38–58. These crossclaims arise in part out of a settlement agreement Karp made with iCross Funds 4, LLC, another creditor, to resolve three state-court actions iCross brought against Karp for unpaid debts: a foreclosure action related to 1357 Flatbush, a foreclosure action related to another property in Brooklyn, and a suit on a guaranty Karp executed. Dkt. 114 at 4. The global settlement of these cases assigned all interests in Hello Flatbush to iCross. Dkt. 138 ¶ 15. It also required that Karp turn over books and records connected to Hello Flatbush's operations. *Id.* Hello Flatbush now says that Karp failed to comply with the settlement agreement and misrepresented the status of the Citibank loan to iCross when reaching the settlement agreement.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Summary judgment is appropriate when 'there can be but one reasonable conclusion as to the verdict,' . . . and no rational factfinder could find in favor of the nonmovant." *Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "Summary judgment should be denied if, when the party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in favor of that party." *Id.*

## DISCUSSION

I.  **The Court grants Citibank's motion for summary judgment against Hello Flatbush.**

   A. **Citibank has established its *prima facie* entitlement to summary judgment.**

All parties agree that New York law governs this case. "In a foreclosure action under New York law, a plaintiff establishes its prima facie entitlement to summary judgment by producing evidence of the mortgage, the unpaid note, and the defendant's default." *Gustavia Home, LLC v. Rutty*, 720 F. App'x 27, 28 (2d Cir. 2017). "Where, as here, the defendant contests standing to foreclose, . . . the plaintiff must additionally demonstrate that it was the holder or assignee of the mortgage and note when the action was commenced." *Id.* at 28–29. "If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to demonstrate the existence of a triable issue of fact as to a bona fide defense to the action." *CIT Bank N.A. v. Donovan*, 856 F. App'x 335, 336 (2d Cir. 2021) (cleaned up).

"Standing" as discussed in foreclosure cases "should not be confused with Article III standing," but rather reflects a requirement that a plaintiff seeking relief satisfy "certain conditions before being able to pursue foreclosure." *Kairos Credit Strategies P'ship, LP v. Friars Nat'l Ass'n,*

2

*Inc.*, 2023 WL 8602827, at *3 (S.D.N.Y. Dec. 12, 2023). "Under New York law, '[a] plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note.'" *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 222 (2d Cir. 2016) (alteration in original) (citation omitted). If the plaintiff is an assignee, "[e]ither a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation." *1077 Madison St., LLC v. Smith*, 670 F. App'x 745, 746 (2d Cir. 2016) (citation omitted).

Citibank produced the note that Cantor originally issued to Hello Flatbush, Dkt. 105-2, along with three written assignments of the mortgage: first, the assignment from Cantor to CCRE, Dkt. 105-6; second, the assignment from CCRE back to Cantor, Dkt. 105-7; and third, the assignment from Cantor to Citibank, Dkt. 105-8. While each of the three assignments transferred the mortgage, "courts have held that a mortgage assignment referencing the transfer of the mortgage together with the notes and bonds or obligations described in the mortgage is sufficient to assign both the mortgage and the underlying note." *Wilmington Tr., Nat'l Ass'n v. Winta Asset Mgmt. LLC*, 2022 WL 2657166, at *6 (S.D.N.Y. July 8, 2022) (cleaned up). Where, as here, "the assignments of the [m]ortgage contain clear references to the [n]ote," the mortgage assignments establish assignment of the note as well. *Id.*; *see, e.g.*, Dkt. 105-8 (assigning the "[m]ortgages listed . . . securing payment of note(s) of even date therewith . . . [t]ogether with any and all other liens, privileges, security interests, [and] rights . . . to which Assignor is otherwise entitled as additional security for the payment of the notes and other obligations described herein"); *see also Kairos Credit Strategies*, 2023 WL 8602827, at *4 (rejecting argument that mortgage assignment was insufficient to show standing "as the mortgage assignment here transferred the underlying debt too"). So the note and assignment documents are sufficient to establish Citibank's standing.

Citibank has also "produc[ed] evidence of the mortgage, the unpaid note, and the defendant's default," which establishes its *prima facie* right to foreclosure. *Gustavia Home*, 720 F. App'x at 28. It submitted the recorded mortgage on the property at 1357 Flatbush Avenue, which was first issued to Cantor and eventually assigned to Citibank, Dkt. 105-4; the note in which Hello Flatbush promised to pay Cantor and its assignees $15,000,000, Dkt 105-2; and the loan agreement and loan history, which shows that the loan is in default, Dkts. 105-3, 105-9. The fact of default is undisputed. *See* Dkt. 127 ¶¶ 12–14, 18.

Hello Flatbush's response is that these documents are inadmissible. "[M]aterial relied on at summary judgment need not be admissible in the form presented to the district court. Rather so long as the evidence in question 'will be presented in admissible form at trial,' it may be considered on summary judgment." *Smith v. City of New York*, 697 Fed App'x 88, 89 (2d Cir. 2017) (quoting *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001)). Here there is ample basis to conclude that the evidence would be presented in admissible form at trial.

First, the declaration of Anne Heslop, an asset resolution specialist with Midland Loan Services, the servicer on the loan, establishes that prior to the commencement of this case, Citibank was in "exclusive possession of the original Note, endorsed to lender pursuant to the allonges attached to the Note, and has not transferred the same to any other person or entity." Dkt. 105, at

3

¶¶ 1, 11. Second, Heslop's declaration attaches all the relevant loan and mortgage documents, including the assignments of the mortgage, from "the file kept by Midland and [Citibank] on the Loan including all Loan Documents . . . which are made and kept in the ordinary course of business." *Id*. ¶ 1.

Heslop is competent to testify with personal knowledge that Citibank possessed the note (and the assigned mortgage) at the time it commenced this action. While Hello Flatbush complains that Heslop was not employed by Midland until 2021, after the assignment of the mortgage to Citibank, that was two years before this case commenced. This is alone sufficient to establish Citibank's standing, because physical possession of the note "is sufficient on its own to prove a plaintiff's standing to foreclose on the mortgage associated with the note." *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 223 (2d Cir. 2016); *see also Wells Fargo Bank, Nat'l Ass'n v. Prince 26, LLC*, 2023 WL 5152420, at *6 (S.D.N.Y. Aug. 10, 2023).[2]

As to the loan documents more generally, Heslop's declaration provides a foundation for their admissibility as business records under Fed. R. Evid. 803(6). Heslop's declaration states that she is an asset resolution specialist working at Midland, the servicer on the loan at issue in this case pursuant to a limited power of attorney attached to the declaration, Dkt. 105 ¶ 2, that she "reviewed the file kept by Midland and Lender on the Loan including all Loan Documents," which are the documents at issue on Citibank's motion, and that these were "made and kept in the ordinary course of business." *Id*. Heslop's declaration further states that it is made on personal knowledge and that Heslop could testify as to the facts in the declaration if called to do so. If Hello Flatbush's argument is that Midland and Heslop came into the picture after the loan originated and the mortgage was assigned to Citibank, that is insufficient to establish the documents' inadmissibility, as "[t]he operative question is whether the underlying records have been sufficiently incorporated by the entity declaring its authenticity, not whether the declarant was present at the time of their creation." *Wells Fargo*, 2023 WL 5152420, at *6-7.

The court in *Wells Fargo* specifically observed that loan documents of the kind at issue here are not "the type of evidence that is so susceptible to fabrication that authentication by a representative of [the entity creating the documents] should be required," noting that the assignment of mortgages "contain a government seal and official signature," and therefore are "self-authenticating records under Federal Rule of Evidence 902(1)." *Id*. at *7 (quotation omitted). The Second Circuit has further observed that a proper witness need not be "an employee of the entity that owns and prepared [the documents]" nor have any "first-hand knowledge" of the document's creation. *Jacobson v. Empire Elec. Contractors, Inc.*, 339 F. App'x 51, 54 (2d Cir. 2009) (citation omitted); *see also Phoenix Assocs. III v. Stone*, 60 F.3d 95, 101 (2d Cir. 1995) ("The custodian need not have personal knowledge of the actual creation of the document."

---

[2] Hello Flatbush further suggests that in one paragraph of Heslop's declaration referring to the note, she uses the term "original" while in another she doesn't. But the note itself is attached to Heslop's declaration, and Hello Flatbush does not suggest that the note, which came out of Citibank's and Midland's files, is not *actually* the original note or that it was not *actually* possessed by Citibank at the time this case commenced.

4

(citation omitted)); 5 Weinstein's Federal Evidence § 803.08 (2025) ("[T]he witness need not even be an employee of the record-keeping entity . . . .").

To the extent that Hello Flatbush points to the absence of certain "magic words" concerning Heslop's familiarity with Midland's and Citibank's record-keeping practices, this isn't fatal. To qualify as a competent witness, "[a] person who testifies to the admissibility of business records 'need only show that he [or she] is "familiar with the record-keeping system of the business in question and [knows] how the records were created."'" *Miss Jones LLC v. Stiles*, 2020 WL 4704886, at *2 (S.D.N.Y. Aug. 13, 2020) (alterations in original) (quoting *Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs., Inc.*, 952 F. Supp. 2d 542, 572–73 (S.D.N.Y. 2013)). It is enough to show "sufficient[] familiar[ity]" with a business's record-keeping practices, for example, that a witness attested to interviewing a business's staff, *see SEC v. Credit Bancorp, Ltd.*, 2000 WL 968010, at *10 (S.D.N.Y. July 12, 2000), that a witness attested to "review of and familiarity with [the records at issue]" and knowledge that the business creates and maintains records "in the regular course of . . . business activities," *U.S. Bank N.A. v. 1078 Whillmore LLC*, 740 F. Supp. 3d 157, 174 (E.D.N.Y. 2024), or that a witness is an employee of the business and attests to having "personally reviewed" the documents with the ability to "competently testify" if called as a witness, *Shnayderman v. PayPal, Inc.*, 2023 WL 2647898, at *5 (S.D.N.Y. Mar. 27, 2023). These cases reject the idea that the "buzz words" Hello Flatbush demands are required. Dkt. 124 at 12. Heslop is an asset resolution specialist with Midland, she personally reviewed the file containing the loan documents at issue, makes her declaration on personal knowledge, and declares that she could testify at trial to the contents of her declaration if called to do so. This suffices to demonstrate that at trial, Heslop could establish the admissibility of the loan documents.

Citibank has also adequately established that Midland had the authority to act as Citibank's loan servicer. Hello Flatbush says that Midland's servicing agreement must be before the Court for the Heslop declaration to have any evidentiary value, because without it there is no support for Heslop's "authoriz[ation] to make statements regarding the repayment status of the subject debt." Dkt. 124 at 13 (citation omitted). But the Limited Power of Attorney attached to the Heslop Declaration clearly describes Midland as the servicer and authorizes Midland to, "in [Citibank's] name, place[,] and stead . . . execute and acknowledge in writing . . . all documents customarily and reasonably necessary and appropriate for . . . tasks . . . relating to certain mortgage loans." Dkt. 105-1. These "tasks" include "initiat[ing] suit on and/or foreclos[ing] all Loans," as well as "appear[ing] in legal and administrative proceedings" and "execut[ing] . . . documents necessary to effectuate such appearance, including without limitation, affidavits." *Id.* This document establishes Heslop's authority to make statements about the loan at issue. *See 1078 Whillmore LLC*, 740 F. Supp. 3d at 169 (concluding that similar language gave the declarant, an employee of the servicer, "authority to make a declaration on behalf of [the lender]" and observing that "numerous other courts in this circuit have reached [the same conclusion] in evaluating motions for summary judgment"). Heslop also states in her declaration that Midland is Citibank's special servicer "pursuant to a Limited Power of Attorney" and confirms that she was "authorized by [Citibank] to submit th[e] Declaration." Dkt. 105 ¶ 1.

Even aside from meeting the requirements of Rule 803(6), the relevant documents would be admissible. First, "there is no hearsay issue because the mortgages and assignments 'purport to establish or affect an interest in property,'" *Kairos Credit Strategies*, 2023 WL 8602827, at *4 (cleaned up) (quoting Fed. R. Evid. 803(14)), and they are "admitted to prove the content of the original recorded document" and "its signing and its delivery," they are "kept in a public office," and "[New York law] authorizes recording documents of th[is] kind in that office." Fed. R. Evid. 803(14). Second, Hello Flatbush has given no reason, despite ample notice and time to take discovery and respond to Citibank's contentions, to dispute the reliability of the documents furnished by Citibank. Hello Flatbush doesn't say that the loan, mortgage, and assignments are fakes, contest their terms, or provide any basis to dispute their authenticity. Given all of this, even if the documents were "near misses" as to other hearsay exceptions, they would independently be admissible under Federal Rule of Evidence 807.

In short, the summary judgment record provides a firm basis to conclude that the documents at issue would be admissible at trial. Citibank has made a *prima facie* showing of its entitlement to foreclosure.

### B. Hello Flatbush fails to raise a triable issue of fact as to a *bona fide* defense.

Because Citibank has made its *prima facie* case, the burden shifts to Hello Flatbush to demonstrate "the existence of a triable issue of fact as to a bona fide defense to the action." *CIT Bank N.A.*, 856 F. App'x at 336 (citation omitted). Hello Flatbush argues that triable issues of fact exist as to whether Cantor, the original lender, was a *bona fide* lender for value given "red flags" at the time of the loan about whether Hello Flatbush was authorized to enter into the loan. Dkt. 124 at 15.

As Hello Flatbush acknowledges, New York "law is clear that [mortgagees] do not have a duty of care to ascertain the validity of the documentation presented by an individual who claims to have the authority to act on behalf of a borrower." *LZG Realty, LLC v. H.D.W. 2005 Forest, LLC*, 929 N.Y.S.2d 595, 598 (2d Dep't 2011). But a mortgagee "is under a duty to make an inquiry where it is aware of facts 'that would lead a reasonable, prudent lender to make inquiries of the circumstances of the transaction at issue.'" *Thomas v. LaSalle Bank Nat'l Ass'n*, 913 N.Y.S.2d 742, 744 (2d Dep't 2010) (citation omitted). Without such an inquiry, a mortgagee "is not a bona fide encumbrancer for value." *Id.* (citation omitted).

Hello Flatbush does not contest that Karp had apparent *and actual* authority to act for Hello Flatbush. Dkt. 127 ¶ 21 (admitting that at the time of the loan, Karp "had sole control of [Hello Flatbush] and authority to act for [Hello Flatbush]"). Instead, it says that there were two "red flags" in the transaction that Cantor had a duty to follow up on before making the loan. Both concern 1355 Flatbush Mezz LLC, which was a member of Hello Flatbush with a 99.5% share. Dkt. 131 ¶ 8. First is the absence of a legal opinion "on the capacity or authority of [1355 Flatbush Mezz LLC], which was . . . [a] 99.5% owner of [Hello Flatbush]." Dkt. 124 at 16. Second is the absence of the "corporate resolution from [1355 Flatbush Mezz LLC] authorizing it as the majority member

6

of [Hello Flatbush]." *Id.* These were "critical documents that were missing from the transaction," Hello Flatbush argues, and Cantor should have but failed to investigate further. *Id.* at 17.

This is another "gotcha" argument. Hello Flatbush doesn't contest that 1355 Flatbush Mezz LLC actually was its majority member, nor that 1355 Flatbush Mezz LLC had the capacity and authority to enter into the loan. Hello Flatbush also doesn't cite any case suggesting that the absence of these two documents requires a mortgagee to do further investigation, and New York decisions applying the duty to inquire involve a mortgagee's knowledge of facts that would undermine a mortgage interest, like fraud or a previously recorded interest. *See, e.g.*, *Mortg. Elec. Registration Sys., Inc. v. Pagan*, 991 N.Y.S.2d 51, 55 (2d Dep't 2014) (another person was residing on the property and paying property taxes, and mortgagee should have inquired further); *WMC Mortg. Corp. v. Vandermulen*, 164 N.Y.S.3d 507, 509 (2d Dep't 2022) (title report obtained before issuance of mortgage included an alert about a previous transfer). That isn't the case here, where Hello Flatbush complains about the lack of documents in the absence of any other information suggesting a lurking problem. *Cf. Nyamekye Holding Corp. v. Launch Dev., LLC*, 234 N.Y.S.3d 204, 206 (2d Dep't 2025) (no duty to inquire when the mortgagee lacked knowledge of a previous oral agreement). Hello Flatbush also agrees that Karp had "sole control of . . . and authority to act for [Hello Flatbush]" when the loan was made, and that Cantor was given documents that a reasonable lender would consider sufficient as to Karp's authority. Dkt. 127 ¶¶ 20–21. These documents included Hello Flatbush's 2018 Operating Agreement, which showed that Karp was the managing member, a Borrower's Closing Certificate formalizing the loan, which was signed by both members of Hello Flatbush (including 1355 Flatbush Mezz LLC), and Hello Flatbush's operating documents. *Id.* ¶¶ 20–25; Dkt. 106-2. Cantor had no obligation to do any further inquiry.

Because Hello Flatbush has failed to demonstrate the existence of a genuine issue of material fact as to a *bona fide* defense, Citibank's motion for summary judgment as to Hello Flatbush is granted.

## II. The Court denies Karp's motion for summary judgment against Citibank and Citibank's motion for summary judgment against Karp.

Karp, the guarantor of the loan, moves for summary judgment against Citibank. He argues that he should be "dismiss[ed] . . . as a defendant" because "Citibank did not assert any cause of action against [him] directly as a guarantor." Dkt. 114 at 2–3. "[T]he failure of Citibank to allege a cause of action for breach of the guaranty agreement," Karp says, "precludes [Citibank] from seeking any recovery in this action on the guaranty." *Id.* at 3. Citibank first responds that Karp's motion for summary judgment should be denied because his statement of material facts "fails to cite to any evidence, and thus is not compliant with Local Rule 56.1." Dkt. 122 at 6. In addition, Citibank agrees that it "did not bring a separate cause of action against [Karp] for breach of the [g]uaranty" and explains that it "had to name [Karp] in [this action] in order to preserve its right to a deficiency judgment against [Karp] following a foreclosure sale." *Id.* at 8.

Citibank is correct that in support of his motion, Karp submitted a two-page Local Rule 56.1 statement that did not include a single citation to the record. *See* Dkt. 115. The Court denies his

7

motion on that basis. *See Suares v. Cityscape Tours, Inc.*, 603 F. App'x 16, 17 (2d Cir. 2015) ("[The moving party's] Local Rule 56.1 statement contained no record citations. The district court therefore acted within its discretion in denying [the] motion." (citation omitted)); *see, e.g.*, *Vicente v. Ljubica Contrs. LLC*, 2020 WL 2832808, at *5 (S.D.N.Y. June 1, 2020) ("As an initial matter, the majority of the factual assertions contained in [the] Local Rule 56.1 Statement . . . are not accompanied by 'citation[s] to evidence' in the record . . . . This failure alone warrants denial of [the] motion." (first alteration in original)); *Santander Consumer USA, Inc. v. City of Yonkers*, 2024 WL 4817649, at *1 n.2 (S.D.N.Y. Nov. 18, 2024) ("Courts regularly deny summary judgment where a movant fails to comply with Rule 56.1 . . . ."); *see also* Loc. Civ. R. 56.1(a) ("Failure to submit [a compliant statement] may constitute grounds for denial of the motion.").

Karp's motion fails on the merits as well. "New York law allows a plaintiff in a foreclosure action to name a guarantor in order to ultimately pursue a deficiency judgment against that person following a foreclosure sale." *Wilmington Tr., Nat'l Ass'n v. Kunba, LLC*, 2025 WL 1898968, at *4 (S.D.N.Y. July 9, 2025). "That is what the plaintiff has done here." *Id.* In *Wilmington Trust*, the court rejected an argument identical to Karp's: that "any claim against [the guarantor] should be dismissed because there is no cause of action asserted against him." *Id.* The Court follows suit here because "inclusion of . . . the guarantor[] as a defendant here was not only procedurally proper but necessary[] to enable [Citibank] to preserve its ability to pursue a deficiency judgment against [Karp] in the future." *U.S. Bank Tr. Co., Nat'l Ass'n v. Jericho Plaza Portfolio LLC*, 2024 WL 4338018, at *6 n.4 (S.D.N.Y. Sept. 27, 2024). While Citibank doesn't assert a cause of action against Karp, Karp is properly named as a defendant in the case.

Citibank also moves for summary judgment against Karp on the guaranty. Dkt. 104 at 24 ("Lender is Also Entitled to Summary Judgment Against Guarantor on the Guaranty."). But again, Citibank already conceded that it "did not bring a separate cause of action against [Karp] for breach of the [g]uaranty." Dkt. 122 at 8. Karp is in this case as a nominal defendant so that Citibank can preserve its rights in a potential deficiency action after a foreclosure sale. Citibank doesn't make any claims against Karp, so there's nothing for the Court to adjudicate on a motion for summary judgment. The motion is denied.

### III. The Court grants in part and denies in part Karp's motion for summary judgment against Hello Flatbush.

Hello Flatbush alleges four crossclaims against Karp: 1) breach of contract for failing to comply with the iCross settlement agreement's requirement that Karp turn over books and records to iCross and give iCross access to the Flatbush property, 2) breach of fiduciary duty for entering into loans without authorization, 3) contribution for any damages Hello Flatbush caused to other parties, and 4) indemnification from any judgment against Hello Flatbush. Dkt. 68 ¶¶ 38–58. Karp moves for summary judgment against Hello Flatbush on all four claims.

As to the contract claim, Karp argues that because "Hello Flatbush was not a party to the State Court Actions and was not a party to the Stipulation of Settlement in those actions," "Hello Flatbush is not a third-party beneficiary of the Stipulation of Settlement" and can't sue for its

8

breach. Dkt. 114 at 11. Hello Flatbush responds that it is a third-party beneficiary, and at the very least there are "material issues of disputed fact . . . as to the existence and extent of the third-party beneficiary relationship." Dkt. 128 at 6.

A "third party need not be specifically mentioned in the contract before third-party beneficiary status is found." *FSA Architecture, P.C. v. Acheson Doyle Partners Architecture, P.C.*, 2022 WL 170646, at *4 (S.D.N.Y. Jan. 19, 2022) (citation omitted). Instead, under New York law the key question is the contracting "parties' intent to benefit a third party" as "shown on the face of the agreement," also "consider[ing] the circumstances surrounding the transaction." *Id.* (citations omitted); *see also Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 251 (2d Cir. 2006) ("[A] non-party must be the intended beneficiary of the contract, not an incidental beneficiary to whom no duty is owed" to "succeed on a third party beneficiary theory." (citation omitted)). Hello Flatbush identifies provisions in the settlement agreement that ensure Hello Flatbush "would continue as an ongoing enterprise," including the requirement that "the information necessary to operate [Hello Flatbush] w[as] to be provided by Karp to iCross." Dkt. 128 at 4–5. These provisions, and the parties' understanding at the time of contracting, Hello Flatbush argues, raise at least a question of fact about the parties' intent. Karp doesn't address this argument or the underlying contractual provisions on reply, and he has the burden of demonstrating that there is no genuine issue of material fact.

Karp then observes that "Hello Flatbush did not name any of the other parties to [the settlement stipulation] as cross-claim defendants." Dkt. 114 at 12. Karp doesn't explain how this affects the claims against him, nor does he cite to any supporting authority for this argument. Such "perfunctory and undeveloped arguments . . . are waived." *Moore v. U.S. Postal Serv.*, 159 F. App'x 265, 268 (2d Cir. 2005) (citation omitted); *see also Lyn v. Inc. Vill. of Hempstead*, 2007 WL 1876502, at *16 n.13 (E.D.N.Y. June 28, 2007) ("Issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (citation omitted)). And on reply, Karp suggests that a stipulation of settlement cannot be the basis for a third-party beneficiary claim. The Court does not consider this argument, which was raised for the first time in Karp's reply brief. *See In re Various Grand Jury Subpoenas*, 235 F. Supp. 3d 472, 485 (S.D.N.Y. 2017) ("The law in the Second Circuit is clear that arguments . . . raised for the first time in reply briefs need not be considered."). Summary judgment is inappropriate on this claim.

As to the fiduciary duty claim, Karp says that Hello Flatbush "has failed to establish the requisite fiduciary relationship with [him]." Dkt. 114 at 15. Hello Flatbush responds that Karp was Hello Fresh's "direct[] and indirect[]" principal, and further that he owed Hello Flatbush a fiduciary duty arising out of his superior knowledge about the loan transaction. Dkt. 128 at 6. It says that Karp knew there were problems with how the loan (taken in Hello Flatbush's name) was obtained but he proceeded anyway. *Id.* Karp doesn't respond to this argument about why he owed Hello Flatbush a fiduciary duty, so he has abandoned it. *See United States ex rel. Taylor v. GMI USA Corp.*, 714 F. Supp. 3d 275, 293 (S.D.N.Y. 2024) (when a "reply brief is silent on [a] point," it is "abandoned" (citation omitted)); *Doe v. Indyke*, 465 F. Supp. 3d 452, 466 (S.D.N.Y. 2020) ("Defendants do not respond to this argument in reply, and the Court deems them to have

9

abandoned the argument."). In addition to his silence on this argument, there is no question that Karp exercised control over Hello Flatbush during the period at issue on the claim, demonstrating the existence of genuine issues of material fact. S*ee* Dkt. 138 ¶ 21. Karp then argues that Hello Flatbush's claim is about Karp's responsibilities to iCross, not Hello Flatbush itself. Dkt. 114 at 15–16. Not so. Hello Flatbush's claim is that Karp breached his duty towards it when he entered into a $15,000,000 loan in Hello Flatbush's name without ensuring that Hello Flatbush fully authorized the loan. Dkt. 128 at 7–8; *see also* Dkt. 68 ¶¶ 48–50. Karp makes two other arguments: first, that the claim is not pled with specificity; and second, that it is duplicative of the contract claim. The Court disagrees; Hello Flatbush has made a sufficient showing at this juncture, and again, Karp's arguments are conclusory, undeveloped, and presented without argument, so they are waived. *See Moore*, 159 F. App'x at 268. The fiduciary duty claim survives.

Karp's argument for summary judgment on the contribution claim is that Hello Flatbush does not seek contribution in relation to a personal injury action. Dkt. 114 at 17–18. Hello Flatbush says that New York contribution law "places no limit . . . upon the legal theories which may be asserted as a basis for the claim." Dkt. 128 at 8 (quoting *George Cohen Agency v. Donald S. Perlman Agency*, 414 N.E.2d 689, 693 (N.Y. 1980)). But that language from *George Cohen Agency* interprets New York's impleader statute, which is not at issue here. In fact, "a claim for contribution is limited to actions for 'personal injury, injury to property, or wrongful death,'" all "actions sounding in tort," and "New York courts have . . . refused to recognize common law contribution claims in non-tort actions." *United States ex rel. Ryan v. Staten Island Univ. Hosp.*, 2011 WL 1841795, at *6 (E.D.N.Y. May 13, 2011) (quoting *SSDW Co. v. Feldman-Misthopoulos Assoc.*, 542 N.Y.S.2d 565, 566 (1st Dep't 1989)). "It is overwhelmingly clear that the basis of the lawsuit brought by [plaintiff Citibank]," for which Hello Flatbush seeks contribution, is foreclosure and not a tort. *SSDW Co.*, 542 N.Y.S.2d at 566. "Moreover, [Hello Flatbush], merely by invoking the language of tort in its third-party complaint . . . cannot transform [plaintiff Citibank's original] action into one which sounds in tort." *Id.* The contribution claim fails as a matter of law.

And finally, as to the indemnification claim, Karp points out that "[n]either the Stipulation of Settlement nor the Assignment of Membership Interest contained any indemnification provision in favor of Hello Flatbush," and "Hello Flatbush is not a party to those agreements." Dkt. 114 at 20. On that basis, he says that Hello Flatbush can't "maintain a cause of action for indemnification." *Id.* Hello Flatbush doesn't respond to this argument in its opposition brief, so the Court considers the indemnification claim abandoned. *See Lipton v. County of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."). It is out of the case.

### IV. Citibank's motion to amend the caption is granted.

Citibank also moves to amend the case caption to remove defendants "JOHN DOE NO. 1 THROUGH JOHN DOE NO. XXX." Dkt. 104 at 24–25. These defendants were not served and are not necessary parties to the action. There is no opposition to this motion, and it is granted.

## CONCLUSION

For the reasons stated above, Citibank's motion for summary judgment is GRANTED IN PART and DENIED IN PART, and Karp's motion for summary judgment is GRANTED IN PART and DENIED IN PART. The parties should meet and confer and, by **August 22, 2025**, propose dates for a trial on the remaining issues in the case during the months of November or December, 2025, or January 2026.

The Clerk of Court is directed to terminate Dkts. 102 and 111 and to amend the case caption to terminate defendants "JOHN DOE NO. 1 THROUGH JOHN DOE NO. XXX."

SO ORDERED.

Dated: August 14, 2025
New York, New York

ARUN SUBRAMANIAN
United States District Judge